# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

CHRISTIAN J.,[1]

                                 Plaintiff,

       v.                                    6:18-CV-1004
                                                    (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
DANIEL TARABELLI, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I. PROCEDURAL HISTORY

On February 13, 2017, plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning February 8, 2017. (Administrative Transcript ("T") at 91-92). The application was initially denied on April 19, 2017, and plaintiff timely requested a hearing with an Administrative Law Judge ("ALJ"). (T. 90, 119-20). On November 14, 2017, plaintiff appeared with his representative and

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

testified at a hearing before ALJ Elizabeth W. Koennecke. (T. 60-79). A supplemental hearing was held on April 9, 2018, at which time testimony was given by Vocational Expert ("VE") Linda Voss. (T. 82-89). On April 13, 2018, ALJ Koennecke found that plaintiff was not disabled from February 8, 2017 through the date of her decision. (T. 16-28). Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied on June 21, 2018. (T. 2-7). Thus, the ALJ's opinion became the final decision of the Commissioner.

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months….." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be hire
> if he applied for work

42 U.S.C. § 1382(a)(3)(B). The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience… Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

3

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze ever piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

As of the date of the administrative hearings, plaintiff was 43 years old. (T. 61). He had a GED, along with some college-level education. (T. 61-62). Plaintiff was employed by the United States Army from May 1998 until his medical retirement in February 2012. (T. 63). Plaintiff initially served as an infantryman, then as an intelligence analyst. (*Id.*). He was deployed to Kosovo in 1999 and Afghanistan in 2006. (*Id.*). After retiring from the Army, plaintiff worked in a variety of other

capacities. He worked as a service technician for Office Systems, where he assembled printers and conducted service calls. (T. 63-64). Plaintiff eventually left Office Systems because he disliked his boss, and wanted to pursue other job opportunities. (T. 64). Plaintiff was next employed as a custodian with the U.S. Postal Service, until he left due to the lack of hours and career advancement. (T. 64). Then, plaintiff worked as a field technician for Time Warner Cable until 2016, when he re-injured his back and could no longer physically fulfill his job duties. (T. 64-65). In February 2017, plaintiff took on employment as a driver for McCauley Trucking. (T. 65). Four days after taking this position, plaintiff's VA disability rating increased, and the agency determined him to be "unemployable." (T. 65). He immediately left his employment. (*Id.*).

Plaintiff testified that he suffers from migraines as a result of two neck surgeries. (T. 66). Sitting at a desk for long periods, or keeping his neck in certain positions for an extended amount of time, induced severe headaches. (*Id.*). Nerve block injections and therapy failed to alleviate these issues. (*Id.*). He testified that when "riding out" his headaches, he could not do anything. (*Id.*).

As a result of his Post Traumatic Stress Syndrome ("PTSD"), plaintiff suffered severe anxiety, depression, and fear. (*Id.*). In addition to having become socially withdrawn since returning from Afghanistan, plaintiff had trust issues and was easily agitated. (T. 68). He also testified to having occasional flashbacks and nightmares. (T. 68-69). His main focus at the time of the hearing was therapy, and he did not engage in many other activities. (T. 69). Plaintiff described his concentration as poor. (*Id.*). He

complained of a lack of sleep due to sleep apnea and anxiety, which also caused him to become agitated. (T. 70). Plaintiff described two incidents in April 2017 when he was evaluated for making suicide threats. (T. 71, 77-78). Plaintiff was training his dog to become a service animal, in order to assist with his PTSD and anxiety symptoms. (T. 72).

Plaintiff could perform general housework including wiping, cleaning, vacuuming and laundry. (T. 74-75). He did not lift laundry baskets because of his back, but could fold clothes. (T. 75). Plaintiff's girlfriend did the grocery shopping; plaintiff would not go by himself. (*Id.*).

## IV.  THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 8, 2017, the alleged onset date. (T. 18). At step two, the ALJ found the following severe impairments: obesity, a neck impairment with associated headaches, and a mental impairment. (T. 19).

At step three of the sequential analysis, the ALJ found that none of plaintiff's severe impairments, alone or in combination, met or equaled the severity of a Listed Impairment. In reaching this determination, the ALJ considered listings 1.04 (Disorders of the Spine), but determined that the medical evidence did not support the level of severity necessary for such listing. (T. 20-21). The ALJ further considered listing 12.04 (Depressive, Bipolar, and Related Disorders); 12.06 (Anxiety and Obsessive-Compulsive Disorders); 12.08 (Personality and Impulse Control Disorders); and 12.15 (Trauma and Stressor-Related Disorders). (*Id.*). However, in considering

whether the "paragraph B" and "paragraph C" criteria were satisfied, the ALJ found

that plaintiff's mental impairments failed to meet these listings.  (*Id.*).

At step four, the ALJ found that plaintiff had the RFC to perform

> light work as defined in 20 CFR 404.1567(b) except occasional neck postures. [Plaintiff] retains the ability to: understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; handle simple, repetitive work-related stress in that he can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the [plaintiff] to supervise or manage the work of others[;] should avoid work requiring more complex interaction or joint effort to achieve work goals; can have no contact with the public.

(T. 21).

The ALJ then determined that plaintiff was "capable of performing past relevant

work as a cleaner." (T. 26).  Moreover, relying on the VE's testimony, the ALJ found

that there were other jobs that existed in significant numbers in the national economy

that plaintiff could perform. (T. 26-27).  Accordingly, the ALJ determined that plaintiff

was not disabled through the date of her decision.  (T. 28).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    The ALJ failed to properly weigh the opinion of treating psychologist Dr. Higham in accordance with the treating physician rule, rendering her RFC unsupported by substantial evidence.  (Plaintiff's Brief ("Pl.'s Br.") at 14-19) (Dkt No. 11).

2.    The ALJ failed to adequately account for all limitations of plaintiff's mental disorders because she failed to properly consider whether plaintiff needs a therapy dog.  (*Id.* at 20-23).

3.     The ALJ failed to properly evaluate plaintiff's VA disability rating, providing legally insufficient reasons for her rejection. (*Id.* at 23-25).

Defendant argues that the ALJ's decision is supported by substantial evidence. (Defendant's Brief ("Def's Br.") at 3-15) (Dkt. No. 15).  For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

## DISCUSSION

## VI.   RFC EVALUATION/TREATING PHYSICIAN

### A.     Legal Standards

#### 1.     RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Treating Physician

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" of the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule." In *Estrella v. Berryhill*, the court emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as "cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence." *Estrella v. Berryhill*, 925 F.3d 90 (2d Cir. 2019) (quoting

*Garrison v. Colvin*, 759 F. 3d 995, 1017 (9th Cir. 2014)).

If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four Burgess factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 2019 WL 2273574, at *6-7 (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Estrella*, 2019 WL 2273574, at *7. It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id*.

## B.    Application

### 1. Weighing of Treating Source Opinion

Plaintiff argues that the ALJ failed to properly weigh the mental RFC evaluation of treating psychologist Jane E. Higham, Ph.D. (T. 774-776). Dr. Higham was a member of plaintiff's treatment team[2] at the VA Medical Center. She treated plaintiff from December 2016 until November 2017, when plaintiff moved from the Syracuse area. (T. 361-492, 548-767, 781-826).

Dr. Higham's RFC evaluation is a primarily a "check-box" form, with some narrative statements, dated March 16, 2018. (T. 774-76). In her opinion, she attributed

---

[2]During the relevant time period, plaintiff also treated at the VA Medical Center with psychiatrist Christine Leddy, M.D. and Carol Anderson, LCSW.

several listed symptoms to plaintiff, including pervasive loss of interest in almost all activities, appetite disturbance with weight change, decreased energy, thoughts of suicide/harming others, mood disturbance, difficulty thinking or concentrating, emotional withdrawal or isolation, and memory impairment, among others. (T. 774). She indicated plaintiff's prognosis was "moderate." (*Id.*). With respect to plaintiff's ability to do work related activities on a day-to-day basis in a regular work setting, Dr. Higham listed as "unlimited or very good" plaintiff's ability to understand and remember very short and simple instructions, and "limited but satisfactory" his ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, make simple work related decisions, ask simple questions or request assistance, be aware of normal hazards and take appropriate precautions, and adhere to basic standards of neatness and cleanliness. (T. 775).

Dr. Higham listed as "seriously limited, but not precluded" plaintiff's ability to remember work-like procedures; maintain attention for two hour segments; maintain regular attendance and be punctual with customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; interact appropriately with the general public; maintain socially appropriate behavior; travel in unfamiliar places; and use public transportation. (*Id.*). Dr. Higham further found that plaintiff was "unable to meet competitive standards" in his ability to complete a normal workday and workweek without interruptions from psychologically

based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; and deal with normal work stress. (*Id.*).

Dr. Higham further opined that plaintiff has had repeated episodes of deterioration or decompensation in work or work-like settings which cause him to withdraw from the situation or experience exacerbation of signs and symptoms; however she did not provide specific examples of the same. (T. 776). Moreover, Dr. Higham checked "yes" as to whether plaintiff had deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. (*Id.*). Dr. Higham concluded that plaintiff's overall impairments and work-related limitations would cause him to be off task more than 20% of the time during an 8-hour workday, and absent from work more than four days per month. (*Id.*). In a narrative section of the same form, Dr. Higham indicated that plaintiff's mood symptoms, including anxiety, depression, and PTSD, "interfere in his overall functioning, particularly in situations with moderate or greater demands and situations which require him to interact socially." (T. 775). She also opined that "plaintiff may have transportation problems and he will be limited in his ability to utilize public transportation." (T. 776).

After careful consideration of the entire record, the ALJ gave "partial evidentiary weight" to Dr. Higham's evaluation. At the forefront, the ALJ acknowledged Dr. Higham's medical specialty, as well as her treating relationship with plaintiff. (T. 23). Based on Dr. Higham's opinion, the ALJ limited plaintiff to simple work activity with limited social interaction. (*Id.*). However, the ALJ rejected Dr. Higham's most

restrictive limitations, because they were not supported by the psychologist's own treatment notes and plaintiff's activities of daily living. (*Id.*).

This court agrees with the ALJ's description of some of Dr. Higham's restrictive opinions as an "overestimate," based on their inconsistency with her own treatment records. For example, despite her opinion that plaintiff had deficiencies in concentrating, Dr. Higham consistently reported upon examination that plaintiff's attention span, concentration, and memory were "intact," even though plaintiff did exhibit moods ranging from depressed to "good."[3] Dr. Higham also noted, at almost every session, that plaintiff presented as cooperative and pleasant, with the ability to maintain appropriate eye contact and "good" insight and judgment. (*Id.*). Moreover, Dr. Higham's opinion that plaintiff was limited in his ability to adhere to basic standards of neatness and cleanliness is belied by her consistent reports that plaintiff presented as "appropriately groomed," with "good hygiene." (*Id.*). These objective findings upon mental examination at plaintiff's therapy sessions were appropriately considered by the ALJ in determining the amount of weight to afford Dr. Higham's opinion. *See Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) ("The ALJ did not err in declining to afford [plaintiff's treating psychiatrist] controlling weight because his opinion is inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and [plaintiff's] reported activities of daily living.") (other citations omitted); *Monroe v. Commissioner of Social Security*,

---

[3]*See* T. 381, 404, 555, 561, 565, 567, 569, 572, 578, 580, 582, 586, 588, 604, 610, 613, 616, 617, 622, 626, 631, 635, 641, 656, 657, 661, 667, 669, 675, 676, 708, 715, 789, 791, 792, 798, 802, 804, 815, 816, 817, 825.

676 Fed. App'x 5, 7 (2d Cir. 2017) (ALJ's decision to give less than controlling weight to treating physician's opinion was proper where "his treatment notes contradicted his RFC assessment."); *Trimm v. Comm'r of Soc. Sec.*, No. 7:15-CV-1006 (GTS/WBC), 2016 WL 7414531, at *10 (N.D.N.Y. Dec. 2, 2016), Report and Recommendation Adopted, 2016 WL 7409060 (Dec. 22, 2016) ("Overall, the ALJ did not err in failing to afford controlling weight to the opinions of [plaintiff's treating physicians] because the opinions were inconsistent with other substantial evidence in the case record. The opinions were not supported by the physician's own treatment notations which indicated normal mental status examinations. . .). Moreover, records from other members of plaintiff's mental health treatment team reveal predominantly normal mental status examinations. (T. 559-60, 563, 589, 590, 601, 607, 611, 614, 618, 623, 630, 638, 663, 672, 674, 713-14, 796-97, 808-09).

With respect to plaintiff's social functioning, Dr. Higham opined that plaintiff was seriously limited, but not precluded from (1) working in coordination with or proximity to others without being unduly distracted, (2) accepting instructions and responding appropriately to criticism from supervisors, (3) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (4) interacting with the general public, and (5) maintaining socially appropriate behavior. (T. 775). The ALJ's RFC reflects Dr. Higham's opinion, to the extent that it limits plaintiff to work requiring less complex interaction or joint effort to achieve work goals, and no contact with the public.[4]

---

[4]The ALJ's RFC with respect to interaction with the public and co-workers does not contradict Dr. Higham's opinions relating to this area. *See Reilly v. Colvin*, No. 1:13-CV-00785,

Plaintiff accurately notes that the RFC lacks a specific opinion regarding plaintiff's ability to interact with supervisors. Despite the noted lack of specificity, any failure by the ALJ to include a restriction regarding plaintiff's ability to interact with supervisors, or to explain why such a restriction was not necessary, was harmless error. The record does not reflect that plaintiff was precluded from working due to a limitation in his ability to interact with supervisors. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency consideration."). Plaintiff's psychiatric examinations were consistently normal, and his healthcare providers often observed plaintiff to be cooperative and pleasant. He also attended group therapy sessions without incident. Plaintiff represented on more than one occasion that he was engaging in volunteer work, which presumably included interaction with a supervisor or other authority figure. (T. 320, 557). With respect to his prior employment as a service technician, plaintiff testified that his dislike for his supervisor was one of the reasons he left the position, in addition to being offered more desirable employment elsewhere. (T. 63-64). Plaintiff clarified that his supervisor was, in his opinion, unprofessional. (T. 64). Nevertheless, there is no indication that plaintiff was terminated or otherwise precluded from working at any position due to his inability to interact appropriately with a supervisor. (T. 62-65). Plaintiff himself

---

2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) ("a limitation to only "occasional" or "limited" contact with others has been found sufficient to account for moderate limitations in social functioning"). Moreover, as the ALJ points out, the overwhelming majority of plaintiff's psychological treatment and episodes of decompensation revolved around relationship issues with his girlfriend, as opposed to his reported social anxiety. (T. 25).

admitted that he has never had any problems getting along with his bosses, nor had he ever lost a job because of problems getting along with people. (T. 266).

On March 10, 2017, consultative psychologist Dante Alexander, Psy.D., found plaintiff to be cooperative and his manner of relating, social skills and overall presentation to be adequate. (T. 503). Dr. Alexander opined that plaintiff had mild limitations to interacting adequately with supervisors, co-workers and the public. (T. 504). Based on the evidence cited above, this court finds that there is "not substantial evidence in the record to support a finding that plaintiff was substantially limited in interacting with supervisors . . . [and] the ALJ's failure to include such a restriction or to specifically reject [the treating physician's] opinion was harmless error and does not require remand." *Martinez Reyes v. Comm'r of Soc. Sec.*, No. 18-CV-0394, 2019 WL 3369255, at *7 (W.D.N.Y. July 26, 2019) (citing *Walzer v. Chater*, No. 93-CV-6240, 1995 WL 791963(S.D.N.Y. Sept. 26, 1995).

Moreover, any failure by the ALJ to account for Dr. Higham's opinion regarding plaintiff's ability to interact with supervisors was harmless, because the three jobs which the ALJ relied on in finding plaintiff was not disabled – cleaner, photocopy machine operator and marker – require limited social interaction. Even though the ALJ did not include a supervisor restriction in the hypothetical presented to the VE, judges in the Second Circuit have previously recognized that the proposed jobs only require "limited" or "occasional" interaction with supervisors. *See Paulino v. Colvin,* No. 13 Civ. 3718, 2014 WL 2120544, at *6 (S.D.N.Y. May 13, 2014) (VE testified that individual who could have only occasional contact with coworkers and supervisors, and

no interaction with the public, could still perform the job of cleaner and photocopy machine operator); *Rodriguez v. Berryhill*, No. 18-CV-05238, 2019 WL 4010397, at *6 (S.D.N.Y. Aug. 26, 2019) (VE testified that an individual who could perform simple, repetitive work while having limited close interpersonal contact with supervisors and co-workers, and no close interpersonal contact with the public, could perform the job of marker). Thus, because the record does not support a finding that plaintiff was seriously limited in his ability to interact with supervisors, and because the jobs identified by the ALJ involve only limited interaction with supervisors, the ALJ's failure to specifically address Dr. Higham's opinion regarding this limitation is not grounds for remand. *See Martinez Reyes,* 2019 WL 3369255, at *7.

Next, plaintiff argues that the ALJ erred by dismissing Dr. Higham's opinion that he would be absent from work more than four days per month, as a result of his mental impairments and/or treatment. (T. 776). The ALJ cited plaintiff's treatment history and a lack of missed and/or late appointments in rejecting Dr. Higham's opinion, pointing out that Dr. Higham's records otherwise fail to support such a restrictive limitation. The ALJ properly rejected Dr. Higham's opinion relating to absences as unsupported by the record. As a threshold matter, Dr. Higham's opinion in this regard is not accompanied by any explanation as to how or why she arrived at her conclusion. *See Dunne v. Comm'r of Soc. Sec.*, 349 F. Supp. 3d 250, 262 (W.D.N.Y. 2018) (finding treating physician and nurse practitioner's opinion relating to plaintiff's expected absences unpersuasive and of little value when they appeared on a "one-page, fill-in-the-blank form, and [were] not accompanied by any explanation as to how or why

[they] arrived at their conclusions."). The lack of explanation is problematic, considering Dr. Higham's treatment records indicating predominantly normal mental examination findings, and a lack of other objective evidence that plaintiff would not be able to sustain full-time employment. (T. 616).

It was proper for the ALJ to afford more weight to consultative examiner Dr. Alexander's opinion that plaintiff had "mild limitation to sustain an ordinary routine and regular attendance at work." Dr. Alexander's opinion was supported by plaintiff's treatment history and reported activities of daily living. (T. 504). *See* 20 C.F.R. § 404.1527(c)(4); *see also Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 435-36 (W.D.N.Y. 2019) (ALJ properly rejected treating psychiatrist's opinion that plaintiff would be absent more than four days per month because it lacked objective support and was supported only by plaintiff's subjective complaints); *Labonte v. Berryhill,* No. 16-CV-518, 2017 WL 1546477, at *3–4 (W.D.N.Y. May 1, 2017).

Plaintiff further contends that the ALJ failed to consider how the frequency of plaintiff's treatment supported Dr. Higham's restrictive opinion that plaintiff would be absent from work more than four times a month. At step four of the analysis, it is the plaintiff's burden to provide evidence in support of his alleged disability. *See* 20 C.F.R. § 404.1512(a). Plaintiff, however, failed to present any medical opinion, or other objective evidence, demonstrating that his treatment schedule was so overwhelming that he could not attend to both a full-time work schedule and his treatment. On the contrary, plaintiff's treatment records reflect that, despite plaintiff being "super busy," he was able to balance attending his therapy sessions with

attending dog training, various volunteer activities, selling his girlfriend's house and travel. Thus, I cannot conclude that no reasonable factfinder could have reached the ALJ's conclusion regarding absences from work, based on the evidence of record. *See Z.J.F. by Conkling v. Comm'r of Soc. Sec.*, No. 6:16-1397, 2018 WL 1115516, at \*6 (N.D.N.Y. Feb. 27, 2018); *see also Rood v. Colvin*, No. 12-2595-SAC, 2014 WL 172131, at \*4 (D. Kan. Jan. 15, 2014) (no indication that plaintiff's therapy sessions must "occur during the workday or with such frequency as to constitute a work-related limitation."); *Brown v. Astrue*, No. 08-4026-CV-C-NKL-SSA, 2008 WL 4151613, at \*2 (W.D. Mo. Sept. 2, 2008) (affirming the ALJ's decision where "nothing in the record indicated . . . [plaintiff] could not arrange her medical appointments around a work schedule or that she would need to miss a full day of work for her appointments.") .

The ALJ also properly took into consideration plaintiff's activities of daily living. Despite his impairments, plaintiff was able to "attend to his personal needs, cook, clean, do laundry, go shopping [to a certain extent], and engage in leisure activities and hobby [sic]." (T. 26, 260-61, 494). The record reflects that plaintiff was considering volunteer work at Hancock Airport, and that plaintiff was actually volunteering at a dog shelter and a golf course. (T. 26, 320, 557, 638). Plaintiff reported traveling to Old Forge and Lake Placid, among other places. (T. 26, 580, 589). Moreover, plaintiff described himself as busy and referenced his work toward selling his girlfriend's house. (T. 23, 825). Plaintiff's activities of daily living were reported as within normal limits, despite presenting to his therapist as "very depressed." (T. 782). The ALJ considered the foregoing in weighing the opinion evidence before her.

Despite plaintiff's assertions to the contrary, the ALJ properly relied on plaintiff's activities as a factor in her overall evaluation of the medical opinion evidence and in formulating plaintiff's RFC. *See Cummings v. Comm. of Soc. Sec.*, No. 3:17-CV-0631 (WBC), 2018 WL 2209204, at *8 (N.D.N.Y. May 14, 2018) (citing *Krull v. Colvin,* 669 Fed. App'x 31, 32 (2d Cir. 2016) (ALJ relied, in part, on plaintiff's activities of daily living, such as caring for grandchildren and ability to use a computer, in assessing plaintiff's mental RFC)); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (ALJ properly considered the plaintiff's varied daily activities in formulating the RFC). The ALJ did not rely solely on plaintiff's activities of daily living in affording Dr. Higham's medical opinion less than controlling weight. Rather, her lengthy opinion makes clear that she weighed the medical opinion evidence of record by considering many factors, including specialization, treatment relationship, consistency and supportability with the record as a whole. *See* 20 C.F.R. § 404.1527(c).

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 Fed.Appx. 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) ). Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that she deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. See *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013) (although

ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).

## 2. Service Dog Accommodation

Plaintiff contends that the ALJ failed to "properly consider" whether plaintiff required a therapy dog. (Pl.'s Br. at 20). Specifically, plaintiff argues that a service dog should be considered an accommodation which cannot be considered in determining whether plaintiff could engage in substantial gainful activity. Although plaintiff's statement of law may be accurate, there is no evidence in the record that plaintiff in fact "required" such an accommodation, i.e. the services of a therapy dog, to function in the workplace. Based on the record before this court, it appears that the dog was plaintiff's pet, with whom plaintiff chose to attend service animal training. The record further reflects that plaintiff and his dog were still participating in the service dog training program throughout the alleged disability period. (T. 72). While Dr. Higham opined that a "service dog would provide a benefit for maintaining psychological well-being" (T. 321), there is no medical opinion of record that plaintiff required the assistance of a service animal in order to engage in substantial gainful employment.

The ALJ specifically analyzed this issue, pointing out that plaintiff was "not prescribed the service dog to manage his symptoms; instead, he made the decision to utilize the service dog, which [Dr. Higham] supported." (T. 24, 321). *See Hudson v. Berryhill,* No. 3:17-CV-29, 2018 WL 1092487, at *12 (D. Or. Feb. 28, 2018) ("[E]ven

if the Court construed [the treating physician's] letter as an opinion that Plaintiff's symptoms would improve if he had a companion animal at work, the letter is not an assessment that Plaintiff lacks the capacity to function without an animal."). The ALJ further identified medical records reflecting unremarkable findings upon plaintiff's mental examinations, despite the dog's absence and/or lack of participation. (T. 24, 580, 782). The ALJ also pointed out the dog's incomplete training as evidence that plaintiff did not require the assistance of a service animal at work. (T. 24, 300, 345-52). Based on the foregoing, the ALJ did not err in excluding the need for a service dog in plaintiff's RFC. Plaintiff failed to present evidence that he required a service dog in order to function, and the ALJ's determination was otherwise supported by substantial evidence.

### 3. Veteran's Affairs ("VA") Disability Rating

Last, Plaintiff argues that the ALJ erred in failing to attribute any weight to plaintiff's VA disability rating. "Disability decisions by other governmental agencies are not binding on the ALJ, but are entitled to some weight and should be considered." *Frost v. Colvin,* No. 1:14-CV-00965, 2017 WL 2618099, at *3 (W.D.N.Y. June 16, 2017) (quoting *Rivera v. Colvin*, 592 Fed. App'x 32, 33 (2d Cir. 2015)); *see also Machia v. Astrue*, 670 F. Supp. 2d 326, 336 (D. Vt. 2009) ("The point of the Second Circuit's admonition to accord VA determinations 'some weight' is that in addition to the oral testimony and medical evidence, VA rating decisions are another item to be placed on the evidentiary scale.").

Plaintiff's argument regarding the ALJ's consideration of his VA disability

determination is without merit. In February 2017, the VA determined that plaintiff had a service connected disability of 90%. (T. 314). The VA further determined that plaintiff was "unemployable." (*Id.*). The ALJ considered the VA's determination but gave it no weight, noting that the decisions of such agency are based on different standards for benefits. *See Monette v. Colvin,* 654 Fed App'x 516, 518 n. 3 (2d Cir. 2016) (noting that the plaintiff's VA disability rating "would be of limited relevance before the [SSA], since different rules and standards govern.") (other citations omitted). Moreover, the ALJ concluded that the VA determination lacked credibility, as the record reflects that plaintiff was deemed "unemployable" during a period that he was actually working. (T. 24). Indeed, plaintiff testified that he was employed as a driver with McCauley Trucking when he received the VA's determination that he was unemployable, and plaintiff implied that he quit only to ensure that his VA benefits continued uninterrupted. (T. 65, 77). Accordingly, this court "cannot conclude that the ALJ failed to consider the VA's disability determination[,] and it cannot be said that the ALJ's decision not to afford it more weight is an error." *Frost v. Colvin,* 2017 WL 2618099 at *3 (internal quotations omitted) (quoting *Rivera v. Colvin*, 592 Fed. App'x at 33); *see also Laubacker v. Colvin,* No. 1:15-CV-01055, 2017 WL 1352145 at *2 (W.D.N.Y. Apr. 12, 2017) ("the ALJ was not obligated to accept the VA's assessment of plaintiff's level of disability"); *Fisher v. Colvin,* No. 5:14-CV-1498 (MAD/DJS), 2016 WL 8677160, at *11 (N.D.N.Y. Mar. 11, 2016) ("Given that he considered it, I find that the ALJ did not err in his handling of the VA determination when determining the plaintiff's RFC."), Report and Recommendation Adopted, 2016 WL 1248900

(N.D.N.Y. Mar. 29, 2016).

WHEREFORE, based on the above, it is

ORDERED, that the Commissioner's decision is **AFFIRMED** and the complaint is **DISMISSED**, and it is

ORDERED, that judgment be entered for **DEFENDANT**.

Dated: December 16, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge